First case on the docket this morning. Number 206391, Don Crawford v. John Tilley, et al., oral argument not to exceed 15 minutes per side. Mr. Nolan, you may proceed for the appellant. Good morning. Good morning. May it please the court, Brett Nolan for the appellant, James Irwin, I'd like to reserve three minutes for my rebuttal. Very well. Your honors, the district court erred in denying qualified immunity to James Irwin in this case when it failed to answer one important question. What exactly did James Irwin do? The plaintiff alleges that Mr. Irwin acted with deliberate indifference toward the serious medical needs of Mark Crawford while he was incarcerated at the Kentucky State Reformatory. But in her 30-page complaint, which includes more than 120 different paragraphs of allegations, the plaintiff fails to allege one single well-pleaded fact that might explain how Mr. Irwin personally violated... What about the approval of the transfer? That paragraph. Sir, I think you're referring to paragraph 97, Judge Nalbandian. I don't think that's enough to state a claim for deliberate indifference. I agree that that's a well-pleaded fact. In paragraph 97, where she alleges that he personally approved the transfer from the She also, in the amended complaint, speculates that he might have been aware of his medical condition at that time. Even if all of that were true, that's not enough to state a deliberate indifference claim because it gives us no indication that after he was transferred to Kentucky State Reformatory that Mr. Irwin had any knowledge about his treatment, what his treatment would be, whether he'd be denied treatment, given adequate treatment. What do we do with these cases? I'm thinking about this Taylor case and Farmer v. Brennan that suggests there's some kind of a class theory where, let's say, you're a member of a class of prisoners that need serious medical attention or something, define it that way, and I know that there's substandard care at the prison or whatever. Why is that not like those cases? A couple of things, I think. It's not like those cases because we don't have allegations that would even support that theory. The closest you might get is an allegation that Mr. Irwin knew that statewide in the Department of Corrections there was constitutionally inadequate care. That's a conclusion. We don't really know what that means. That he knew that there was inadequate care? How is that a conclusion? Isn't that an allegation of fact that he has the knowledge? I don't think so. And I would compare it to Iqbal where there was an allegation that the defendants in that case knowingly subjected the inmates to a discriminatory policy, an allegation that inadequate medical treatment is a conclusion just like the one in Iqbal. No, that's an issue of fact, isn't it? I mean, you'd have to establish the factual basis for it, but I mean, I think knowledge that he has knowledge is factual, I think. I don't think an assertion, I think it is a question of fact ultimately whether he has knowledge, but I don't think it's a well-pleaded fact to just say that someone was specifically aware. What else can he do to allege that he knew it other than allege it? You could have, I guess it depends. Here we have a supervisor, so we have someone that wasn't on the ground, so you couldn't say... Can you answer my question? Sure, sure. I know the facts. So one example could be that there were allegations that he had made public comments about knowing there was a problem, that subordinates had said things to a supervisor, but to just say that he knew, I think that's exactly like the allegation to NICPOL, where the allegation was that the defendants knowingly subjected the inmates to a discriminatory policy on account of race, and the Supreme Court said that is a conclusion that we don't consider under Rule 8. The cases that have found liability here, or in this situation to state a claim, have had more facts to sort of lead to the plausible inference that someone knew. I'm trying to think of how a plaintiff would do this, but you're saying a plaintiff would have to say, Mr. Irwin received reports every day from every prison about updating him on medical care or something, and then you could glean from that that he knew. Then you could allege, I assume, that he had knowledge that the care was substandard, because you say he got reports every day about allegations or whatever, how many complaints were filed. I think that's right. I think there are cases that this court has recognized where a subordinate had complained about overcrowding at a prison, and then resigned when nothing was done, and that might be enough to sort of lead to the reasonable inference that they had knowledge of the problem. I think your better argument is there's no allegation that's specific as to Crawford, as opposed to that he doesn't have... The allegation about knowledge is that Irwin was specifically aware that the correct care in Southern Health had a pattern of failing to do this and that. I mean, rather than argue that doesn't allege knowledge, I think your better argument is it doesn't focus on Crawford, and it doesn't focus on Kentucky, that these entities, correct care, are all over the country, and the fact that he knows of a pattern around the country isn't specific as to Crawford and isn't specific to this case. I think that's your better argument, and if I were you, that's kind of where I'd go. Judge Griffin, I agree that that's also a very strong argument, and I would add to it that the allegation that you were reading, I think from paragraph 41 maybe, was the specific knowledge that correct care provides constitutionally inadequate care. I think that that is certainly a legal conclusion. There's no allegation of what that pattern is, and that... No, I disagree with you. I think the problem is it doesn't specify the plaintiff here, and it doesn't even specify Kentucky. You argued that in your brief. Correct. I'm just telling you, I think that's your better position. Correct. So, you may want to argue your stronger points. And I guess, let me see if I can connect it to that. There's no allegation of the kind of harm that Mark Crawford suffered here, of a pattern that would have led to that kind of harm. Well, I don't know. It's a general allegation of a pattern. I don't even know what it means, and it's not specific. I mean, you say it doesn't allege knowledge. I think it alleges knowledge, but it doesn't allege specific knowledge of this situation and this plaintiff, and... And I agree with you, Judge Griffin, and I think that goes both to what the knowledge is, and I think it ties to our causation argument. But you think, for supervisory liability, you don't have to know about this particular plaintiff, right? I mean, do you think the Taylor Farmer class theory is clearly established, or do you think it's not clearly established for Eighth Amendment deliberate indifference supervisory? Like, where? I think it's clearly established, it just doesn't apply here, because I don't know what class Mr. Crawford would fall under. It's just a pleading failure? It's a pleading failure. If it applied here, then the class would have to be something like, every inmate at every Kentucky state facility, statewide, who suffers any kind of injury of any kind, no matter what the cause is, no matter what the prison is, no matter who the staff were, it would apply just the same to an allegation, like Mark Crawford's did, he didn't receive his chemotherapy treatment, as it would an allegation at an entirely different prison, where someone had a broken leg that wasn't treated properly. I can't see why, in theory, you could do that, couldn't you? In other words, if I said correct care hires people that they say are doctors and they're actually not doctors, statewide, then any inmate who needs medical care could be a member of some kind of class of inmates, and the supervisor might know that and have approved it. I don't know whether all of that would get passed. I can cobble together Farmer v. Brennan, Taylor, and why don't I have a lawsuit at that point? In theory, I think you could get it. If you had a lot of specific allegations that were to that effect, I think that you could. If there are allegations that Mr. Irwin knew that correct care was hiring no doctors and was lying about it, and there was also an allegation that these injuries were the result of not having a doctor. Let me give you a counterexample of someone who might have inadequate care at a prison with a broken leg, but the reason that they didn't get care was because a correctional officer ignored their complaints. Well, that wouldn't have any sort of causal relation to the fact that there were or were not doctors there. It was because a correctional officer was deliberately indifferent to their needs. So I think that you could, if you had a lot of specific allegations, which I don't think we have here, but it still would have to require allegations that would allow the court to plausibly infer that the kind of injury that was suffered here was related to whatever that deliberate indifference was. And so I think that that's missing as well. Do you think that Taylor is a supervisory liability case, or do you think that it, when we say, when we have this language that says, you didn't do your job, or is that a supervisory case, or is that some kind of a direct case? I think that the precedent on the difference between supervisory liability and a direct liability claim for deliberate indifference is really unclear. Because ordinarily, when you're talking about supervisory liability, like the Petras case, that's an excessive force case, is the underlying tort, and so you don't have a mens rea. And so to get to supervisory liability, you're adding sort of a more subjective component. But with deliberate indifference, you already have sort of a high level of subjective, of requiring sort of the mental culpability. And so it's not clear to me what the difference between supervisory deliberate indifference and supervisory liability on its own is, or deliberate indifference on its own, because I think either way, you have to allege subjective knowledge of the substantial risk of injury that actually caused the plaintiff's harm. And that's the deliberate indifference standard. Maybe it's the same as sort of the knowing acquiescence. It's not clear, but I don't think that it ultimately matters, because you have to meet the deliberate indifference standard here. Iqbal says that, I think, pretty clearly. So this is what I'm confused about, the way that supervisory liability meshes with deliberate indifference. Somebody has to be deliberately indifferent, somewhere up and down the chain, right? But does the person at the top have to be? What is the subjective knowledge that this risk was there or could have happened? If you look at Iqbal, where it discusses supervisory liability, it addresses this, where it says that you can't get around the subjective elements of a constitutional tort by alleging supervisory liability, so that you still have to prove the mental state for each defendant. And so in this case, the defendant is a supervisor. That doesn't matter. You still have to prove deliberate indifference. And that's why I don't know if it matters if you're talking about a supervisor or direct liability, because either way, you have to show some sort of heightened mental culpability. But if it wasn't supervisory, though, I think there would be an argument, right, that you'd have to show subjective knowledge about this particular plaintiff. Because the supervisory cases, the ones that are not, the ones that are kind of direct cases, like the supervisory cases are the ones that say, we have two markers. You don't need to know about this particular plaintiff, right, but you have to have, it's not respondeat superior. I see my time is up. If I could just respond to that briefly, Judge Griffin. Please. I would point to Hilvey Marshall, because I think that case shows how this is really blurred. And I don't know if I have a great answer to that, but that was a supervisory liability claim against the deputy superintendent. And they were both allegations, the allegations were something like this individual personally ignored a complaint, and that that individual's job was to sort of refer patient complaints to someone. And the person they were referring to that complaint, that individual knew that that other person was destroying medical records or prescriptions. And so it's couched as sort of a supervisory liability claim, but I think that case sort of shows how the court has blurred this, because there are also allegations that that supervisor personally ignored the complaint and sort of knew what was happening. So I don't know if I have a great answer, but I think that Hilvey Marshall shows sort of why that's confusing. Mr. Cullen, you're seeking dismissal based upon qualified immunity on a 12B6 motion. Our law is quite clear, isn't it, that such motions are disfavored at the motion dismiss stage and that our preference is that qualified immunity be decided at the summary judgment stage? Why does this case fit into an exception to that rule? So I would push back on the idea that qualified immunity is always disfavored. No, not always. It is, I mean, it's a general rule. I've written an opinion on that fact. Sure, and I think that the difference is that when the court has talked about that, it's usually focused on the second prong of qualified immunity. Iqbal was a qualified immunity case, and when you're focusing on the first prong, which is just a failure to state the constitutional injury, I don't think that the cases support sort of thinking that it's disfavored at that stage, because that's just a question of how you have pleaded the case under Rule 8, and it really comes up at the second prong when the court has said that it's hard sometimes to know if the precedent squarely governs the facts of a complaint at the pleading stage, and you need summary judgment to get there, but that squarely governed language... Facts fit into the precedent? Into the clearly established precedent. That would need factual development. Correct. Now, we don't think that it does here. We think that the court could get rid of this case on the second prong very easily just because there's no case law, sort of, in the Appley's brief that looks anything like this with the supervisor being liable on these kinds of allegations, but we primarily briefed this as a prong one because we think that's our best argument. Any further questions for Mr. Nolan? You'll have your three minutes for a moment. Thank you. Good morning. Good morning, Your Honors. I'm Jessica Winters here on behalf of the Appley Don Crawford, and I can tell from the Qualified Immunity in the context of whether the right is clearly established, and the recent Supreme Court cases, the Taylor v. Rioja case, and then after that, the summary reversal on the basis of Taylor v. Rioja and McCoy v. Alamu, indicate that the Supreme Court has to say that you don't have to have a case that's on all fours with the specific fact pattern, and that in an egregious case of a constitutional violation, even if there isn't a case on the exact facts, that Qualified Immunity is not appropriate. And so that's sort of the context that we're in today because we have alleged in our complaint that there is a systematic failure throughout Kentucky prisons to provide medical care to inmates, and that Erwin, as the former commissioner of the Department of... Basically, you're admitting you don't have a case on point? Well, actually, I was looking at this issue last night, Your Honor, and I found a May 2021 case from the circuit, the Motterwell v. Cuyahoga County case, and in that case, the allegations were very similar to the ones we've alleged here. The appellant alleged that the county was taking in inmates from other counties to get money, and as a result, the medical care being provided to the inmates was deteriorating to the point where it was an Eighth Amendment violation. And it alleged the executive defendants, which is how the court termed this group of defendants that was in charge of formulating policy and ensuring that the overall care for inmates was adequate, that the executive defendants knew that medical care was deteriorating, and they had a duty to care for the inmates and to promulgate policies that were... I'm not familiar with the case. I'm sorry. But how high level were these executives? They were at the decision-making level of policy. So they were the decision-makers for... Was that a county commission or a county jailer? I mean, is it a county-level person? It was a county-level person in that case, yes, Your Honor. I mean, I'm just struggling with this idea that we have a state-level... I mean, pretty high-level person, and I don't see any case... I mean, I haven't seen a case at all that gets to that level in the chain. And I think it's pretty hard to tag that person with any individual liability, but then we've got supervisory liability. But I just... I'm struggling. I don't see any cases that get anywhere near this close. Well, in a way, this case fits within a fact pattern where there was individual action and individual knowledge, because the plaintiff has alleged that Irwin himself signed the transfer order. And it's important to know that when he was transferred from Madison County Detention Center to KSR, it was because of his serious medical need. In other words, Madison County had to say, we don't have the ability to care for this prisoner. He was in the hospital and emergency room at that time. And so when Irwin's looking at the application to transfer, the reason for the transfer is a serious medical need. So when he signed it and consented to the transfer to KSR, he basically took on a duty to care for the prisoner under some of the case law in the Sixth Circuit. I would refer the court to the Comstock v. McCrary case, which was cited with approval recently by the circuit in Troutman v. UofL. And it says in that case that prison officials who have been alerted to a prisoner's serious medical needs are thereafter under an obligation to care for the prisoner. But even if he has that obligation, we're still back to the point that there aren't sufficient allegations to show that he knew that the prisoner would not get adequate medical care at the receiving facility. So how do you make that case? I mean, you point to the CNN article. That was not published until two years after Crawford died. So I don't know how he could have read that before. And then we have some lawsuits with unidentified plaintiffs, unidentified problems at unidentified facilities. I just don't know how we get to his knowledge, which is pretty important here. Of course, Your Honor. And you're right, it is important. But this case does fit us within the class of persons. So if he had knowledge that the class of persons, that being, in this case, people with serious medical needs, were not having their needs met because of a systematic failure within the system relating to health care and prisons, then he had an obligation as the commissioner of the Department of Corrections to see to that problem. And he abdicated his responsibility. So I get your argument, but I don't get step one of the premise. Where do we get that he would have understood, personally would have understood, that there was a system-wide failure? I mean, the way you try to prove that is with the CNN article and with these lawsuits. And is the system-wide Kentucky or are you talking nationwide? Because if it's a nationwide system, that's a lot more general than a Kentucky. And I think these are all nationwide, aren't they? I mean, they don't even focus on Kentucky, do they? Right, of course. And you are correct. Well, isn't that kind of important? Well, it is important. CorrectCare is a third-party provider. I know. If CorrectCare is doing something wrong in California, I'm not sure that it's necessarily going to be doing something wrong in Kentucky, that's all. And that's true. And that's a fact that would need to be developed through discovery. You know, you've got to have some allegations in your complaint under Iqbal and Trombley to plausibly allege your claim. I mean, that's what they're arguing. And that is what they're arguing. And we have alleged that Irwin had the responsibility for the safety and health of all the inmates, that he failed to employ qualified individuals to care for the inmates, that he failed to promulgate and implement policies, procedures. Those all sound like conclusions to me. I mean, Mr. Nolan was saying a lot of these allegations are conclusory. Those, to me, sound conclusory as opposed to factually based. I understand that, Your Honor. Aren't those conclusions you just read? I think that they're factual allegations. Specifically, when we refer back to the existence of lawsuits, we refer back to the existence of complaints within the system. And then you get to the point where you're saying, OK, with a supervisory liability under Section 1983 and an allegation of qualified immunity, it's not appropriate to address that at the 12 v. 6 stage. And that's exactly what this Court recently held in May in the Motterwell v. Cuyahoga County case. The allegations there were exactly the same as they are here, Your Honor. The allegations there were that the higher level executive knew and acquiesced in the implementation of unconstitutional policies and that he abandoned duties. They were very broad, vague allegations. And the Court said that's enough at this stage, that it will be at the summary judgment stage after the development of facts that we'll be able to know one way or another whether the actor had a subjective knowledge of the medical need that was ignored. Is this case proceeding against other defendants? Yes. I can't remember. You sued like 16 or 17 different defendants. Are they all kind of in the mix still? Or have some of them been dismissed? What's the status? I'm curious. OK. It has a kind of complicated procedural history. I don't need to know. I'm just curious whether the case has been proceeding against the warden or the nurses. There would be all kinds of other people I would think that would be possibly liable here, right? Yes, Your Honor. And it is proceeding against all the other defendants. And so what the Court held in the Motterwell case was that at the summary judgment stage, the burden will be on plaintiff to present facts showing that the defendant knew about unconstitutional conduct and did more than play a passive role. And the Court states this burden is not on a plaintiff at the pleading stage. And the Court does look to whether the conduct has been specifically declared to be unconstitutional. And the Court said that's another fact that will need to be developed during the discovery phase of the case. We haven't read this Motterwell case. But you're saying that the Court in that case said that the question of whether what the law says will need to be developed in discovery? That seems odd. You're exactly right. And that came out wrong from me. The question of whether it's on all fours with existing precedent is sometimes not a question that can be answered. What is the case that you say that the burden is not on the plaintiff to rebut the defense of qualified immunity? To my understanding, once qualified immunity is raised, it's always the plaintiff's burden to rebut qualified immunity. What case do you say holds the opposite at the motion to dismiss stage? Again, it's the Motterwell v. Cuyahoga County case. Is it in your brief? I do not have the site. Is it in your brief? It is not in the brief. Why not? It was decided in May of 2021, Your Honor. Is it published? Yes. It's 997 F3rd 653. Okay. And are you fairly confident that's the holding of the case as opposed to dicta? And I hope I didn't write it. Well, in that case, the central issue was whether there was an appropriate dismissal at the Rule 12 stage of a 1983 claim on the basis of qualified immunity. And in that case, there were, as I said earlier, similar facts to this where there was alleged a systemic failure in providing medical care to prisoners. And executive defendants were sued. The folks that are in charge of policy and hiring and making all of those decisions from a top-down level to ensure that medical care is being provided. And those defendants said, you don't have sufficient facts against us under ICBAL, and you haven't sufficiently pled our deliberate indifference to your specific person's medical needs. We should be dismissed. The district court denied their motion to dismiss and said that the plaintiff had asserted sufficient facts. And the facts there were, again, very similar to the facts we have asserted in this case. And this circuit affirmed. And this circuit said that this is why we typically do not grant dismissal on the basis of qualified immunity at the Rule 12 stage. I'll take a careful look at it. It would have been good if you would have submitted that as supplemental authority. So I was aware of it today. I'm sorry. I actually didn't find it until last night. But that's on me. I'm so sorry. If you can look at the case in rebuttal, I'd like to have your take on it. Because I don't know the case. I mean, it looks to me like the case relies on Taylor, Farmer, Petras. The same cases that you're citing, right? Yes, Your Honor. The Taylor v. Riolla case seemed to be instrumental in the court's decision, signaling an intention of the Supreme Court to look at not whether things are exactly on point, not whether the fact pattern has been specifically ruled upon in determining whether a right's been well established, but rather the egregiousness of the state actor's conduct. But there are certain facts that you've played. It seems to me that a county-level official who makes policy decisions about spending at the jail and whether to take out county prisoners, whatever it is, it seems just fundamentally different than a state-level Cabinet official. Just looking at that as part of this... I mean, and I understand there's been a lot of criticism of the way qualified immunity works that we kind of sometimes cut these cases pretty close in terms of the fact patterns. But that seems to be a fairly significant fact, and I don't see any case anywhere that gets somebody... I mean, the closest one is Iqbal, right? I mean, trying to sue the Attorney General, and the Supreme Court said no. I mean, I understand it was a pleading failure, but that's what I'm still struggling with, whether I can analogize or say that this Moderwell and Taylor and those cases are close enough. Right. And I see what you're saying, and I have two points in response. The first one being that in this case we not only have this sort of high-level person who's generally in charge. We have this person who actually was personally involved with my client's specific case, read a transfer, signed the transfer on the basis of his serious medical need to put him into a facility that is supposed to be for inmates with serious medical needs. So he had a direct personal involvement with my client's case. And there is case law in the circuit that says when you're aware of a prisoner's serious medical need that you then have a duty to care for it. And then there's the other point to address, which is... Well, and that's what we don't know right now. I know that he signed the transfer, but I... I mean, I assume that somebody at the top signs all sorts of papers, but it doesn't mean he's the decision maker. Right. Are you alleging he was the decision maker? We have alleged that, and we have alleged that he knew, but that is a fact that should be developed through fact discovery. You also have this... Is there an allegation in the complaint, I forget, about the medical care at this specific facility, as opposed to statewide or connect care generally? Yes, there is an allegation that at this particular facility that they were understaffed, that they were using nurses for jobs that should have been done by doctors, that there wasn't sufficient medical oversight by actual physicians, and that particularly with regard to Mark Crawford, they did not follow his medical care plan. And so those are the specific allegations to this facility. Thank you. All right, thank you. Mr. Nolan, you've got three minutes rebuttal. Yes, thank you. To start with, with Motorwell, I know the court will go read it and draw its own conclusions, but if you look through that case, there were a lot of very specific allegations that just aren't present here. There were allegations that this was a county-level executive who was in charge of the facility and had been made aware that the facility had overcrowding problems. He had been made aware because there were allegations that his bosses, the council, had written him a letter and telling him that this was a problem, that he had a subordinate who informed him of the problem and resigned when nothing was done about it. And then there were allegations that this official, after being made aware of overstaffing problems at the facility, personally created a reorganization plan, which led to more overcrowding. Does it have the wording that it is not the plaintiff's burden at the motion-to-dismiss stage to rebut the defense of qualified immunity? That's what Ms. Winters claims it held. Does it so hold? I don't think that's a holding from that case. Is there a dicta to that effectiveness? I don't think so. My recollection from this was that... I didn't understand that was the law. Correct. And I would say we've cited Johnson v. Mosley, a published case which says very clearly the burden is on the plaintiff at the time of dismissal. I thought it was always on the plaintiff. Correct. So even if there was some departure between a cabinet-level official and a county official, could I get a cabinet-level official with the same kinds of allegations? In Motorwell? No. Yes. If I had that, if I said he's in charge of all 12, 30 prisons in Kentucky and in charge of all of the medical care, and he knows that they cut corners to save money, to meet his budget, whatever it is, is there any meaningful difference between the county official who's in charge of something like that and the state-level official for clearly established purposes, is my specific... I think yes, insofar as the allegations... There is some case law, I think, out there that suggests that a supervisor who works at the facility, you could have allegations that stuff was so obvious that was happening at the jail, people were sleeping on floors because there weren't enough cells, that those kinds of allegations could maybe get you to subjective knowledge of a supervisor because they were at the facility every day. I don't think just the hierarchy is necessarily what matters, but the allegations about what that hierarchy means. There are no allegations that James Irwin worked at this facility, that he had day-to-day contact with this facility or anything like that. And I think this goes back to sort of the deliberate indifference point, which is what matters is what the defendant personally knew. And so wherever you are in the chain of hierarchy, there might be something that you knew and you could have responded to and didn't, but there's no allegations here sort of to that effect. You're saying no matter where we are, if it's a deliberate indifference case, whether it's supervisory or whatever, we still have to have the subjective farmer prong, just kind of that gloss has to be on the supervisor. But it has to be knowledge of whatever. I mean, for the supervisor, it's a little bit different because it doesn't have to be knowledge about this particular plaintiff. I know they've alleged that. No, I think that that's right, and that's farmer, where there were allegations that they knew that prison assaults, prison rapes specifically, were so rampant. So yeah, that's farmer. I agree. Okay. Any further questions? All right. Thank you, Mr. Nolan. Case will be submitted.